# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| | ) | **Docket No.:    3:15CR01442-005-JLS** |
| HARTSELL, Michael Alexander | ) | |
| | ) | |

**Prepared for:**     The Honorable Janis L. Sammartino
U.S. District Judge

**Prepared by:**     Alexandra E. Platas
Senior U.S. Probation Officer
Chula Vista, CA
(619) 409-5139
alexandra_platas@casp.uscourts.gov

**Assistant U.S. Attorney**                    **Defense Counsel** (appointed)
Luella Mendoza Caldito                    Keith Howard Rutman
880 Front Street                                   501 West Broadway
Room 6293                                          Suite 1650
San Diego, CA 92101                          San Diego, CA 92101-3541
(619) 546-6732                                    (619) 237-9072
Luella.Caldito@usdoj.gov                    krutman@krutmanlaw.com

**Sentence Date:**     May 20, 2016, at 9:00 a.m.

**Offense:**     21 U.S.C. §§ 841(a)(1) and 846, Conspiracy to Distribute
Methamphetamine, a Class C felony.

**Penalty:**     (Based on 471.3 grams of Methamphetamine [actual])
20 years imprisonment; $1,000,000 fine; at least 3 years' supervised
release; and a $100 special assessment.

**Arrest Date:**     May 21, 2015

**Release Status:**     7/23/2015: Released on $60,000 P/S bond; 64 days presentence custody
served.

**Detainers:**     see Pending Charges section

---

**Codefendants:**
- (01)  RAMIREZ, Gilbert Joseph:  Status hearing set for 4/29/16.
- (02)  ALVAREZ, Olegario:  Status hearing set for 4/29/16.
- (03)  ROSALES, Carlos Jr.:  Sentencing set for 5/6/16.
- (04)  POWELL, Wesley Frank:  Sentencing set for 5/20/16.
- (05)  HARTSELL, Michael Alexander:  Sentencing set for 5/20/16.
- (06)  THOMPSON, Jeffrey Craig:  Fugitive
- (07)  RIVEROS, Angel Star:  Sentencing set for 5/6/16.
- (08)  ALVAREZ, Veronica:  Sentencing set for 8/19/16.
- (09)  ALVAREZ, Frank:  Sentencing set for 5/20/16.
- (10)  JAIME, Nancy:  Sentencing set for 5/13/16.
- (11)  BARRY, Cynthia Ann:  Sentencing set for 5/20/16.
- (12)  WOOLEN, Janice Nadine:  Sentencing set for 5/20/16.
- (13)  GLINSKI, Chase:  Sentencing set for 5/20/16.
- (14)  SAKRY, David William:  Sentencing set for 5/20/16.
- (15)  GARCIA-Arriola, Jose:  Sentencing set for 5/06/16.
- (16)  CASTANO-Moreno, Jhoemi : Dismissed without prejudice.
- (17)  GUDINO, Jose Luis:  Fugutive
- (18)  RODRIGUEZ-Castro, Ismael:  Sentencing set for 5/20/16.

**Related Cases:**   15CR01443-JLS

- (01)  Castillo, Veronica: Sentencing set for 05/06/16.
- (02)  Fortes, Camelle: Sentencing set for 05/06/16.
- (03)  Farias, Jose Valdovinos: Fugitive

15CR01444-JLS

- (01)  Ponce, Jose: Sentencing set for 05/27/16.
- (02)  Sturney, Sabrina Sinclair: Sentencing set for 05/27/16.

15CR01445-JLS

- (01)  Ponce, Omar: Sentencing set for 05/27/16.

**Identifying Data:**



| | |
|---|---|
| **Date of Birth:** | November 21, 1956 |
| **Age:** | 59 |
| **Race:** | White |
| **Hispanic Origin:** | Unknown origin |
| **Sex:** | Male |
| **Eye Color:** | Blue |
| **Hair Color:** | Blonde |
| **Height:** | 5ft. 9in. |
| **Weight:** | 200 lbs. |

| | |
|---|---|
| **SSN#:** | 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 |
| **FBI#:** | 498767LB4 |
| **USM#:** | 50100-298 |
| **CII#:** | A09480966 |
| **CA/DL#:** | N2606855 |
| **ICE#:** | None |
| **PACTS#:** | 1617071 |

| | |
|---|---|
| **Education:** | Graduate Equivalency |
| **Citizenship:** | U.S. Citizen |
| **Immigration Status** | U.S. Citizen |
| **Country of Birth:** | United States |
| **Place of Birth:** | Ft. Ord, CA (Monterrey) |

| | |
|---|---|
| **Current Address:** | 3215 Vista Pacifica Sober Living<br>Vista, California 92084 |

| | |
|---|---|
| **Legal Residence:** | Same as current address |

| | |
|---|---|
| **Alias(es):** | Hartsell, Micheal Alexander; Hartsell, Michael; Hartsell, Michael A. |

| | |
|---|---|
| **Alternate IDs:** | SSN: 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<br>CDC: F88254 |

*Restrictions on Use and Redisclosure of Presentence Investigation Report*. Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and  federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

This presentence report has taken into consideration the statutory factors listed at 18 U.S.C. § 3553(a) and the advisory sentencing guidelines.

## PART A. THE OFFENSE

### Charge(s) and Conviction(s)

1. On May 29, 2015, a one-count indictment was filed in the Southern District of California, charging the defendants (i.e., all but defendant number 18) listed on page 2 with Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. There is also a Criminal Forfeiture allegation pursuant to 21 U.S.C. § 853.

2. On June 23, 2015, a one-count superseding indictment was filed in the Southern District of California, charging the defendants listed on page 2 with the same charges and forfeiture allegation as noted above. The only difference between the two indictments is that an 18th defendant was added.

3. On February 18, 2016, HARTSELL pled guilty to the one-count superseding indictment.

### The Offense Conduct

4. The following is based on materials contained in the United States Attorney's file which includes reports prepared by the Drug Enforcement Administration (DEA). Records of the U.S. District Court file were also reviewed, which includes the affidavit attached to the complaint, the charging document and the factual basis of the plea agreement for HARTSELL, all of which provide man specific details of the instant offense. The Assistant United States Attorney (AUSA), defense counsel, and case agent were contacted, and their comments are noted below.

5. It is noted, discovery material in this matter is voluminous, involving literally thousands of pages relating to the 18 defendants and others involved in this conspiracy. Accordingly, the following is only a summary of the more salient aspects of the offense. The focus will be primarily on the conduct relating to HARTSELL.

*Introduction*

6. The instant investigation began in the early part of 2014, when several confidential informants (CI) provided information about a Jose Ponce (charged in a related case) and Nancy JAIME, the individuals responsible for distributing significant quantities of methamphetamine in North San Diego County, California. The investigation progressed, and in October 2014, law enforcement officials sought and received permission to conduct wiretaps on telephones used by Ponce and JAIME. These initial wiretaps led to the identification of numerous individuals involved in selling methamphetamine. The initial wiretaps were authorized and law enforcement officers were able to gather further evidence of the Target Subjects' illegal activities. In total, agents involved in this investigation conducted court-authorized wiretaps on 20 different telephones.

7.    Investigation revealed that Olegario ALVAREZ (O. ALVAREZ) was an importer and distributor of methamphetamine.  He worked closely with Gilbert Joseph RAMIREZ and Carlos ROSALES, Jr., both of whom provided multi-ounce and pound quantities of methamphetamine to various Target Subjects for distribution.

8.    HARTSELL was identified as a methamphetamine distributor who purchased drugs from RAMIREZ.

*Conduct Specific to HARTSELL*

9.    On March 30, 2015, agents established surveillance at HARTSELL's residence subsequent to intercepted text message communication between HARTSELL and RAMIREZ.  At 8:36 p.m. RAMIREZ arrived at HARTSELL's residence and sometime later RAMIREZ placed a call to inform ROSALES that "he had his boy (HARTSELL) right there" and that HARTSELL wanted to "check if it was fire (good quality methamphetamine)."  RAMIREZ told ROSALES that HARTSELL's "main moving day (primary day for selling methamphetamine) was Friday" and that RAMIREZ therefore wanted to "have him (HARTSELL) hooked up for two or three (pounds of methamphetamine) every Thursday night."  At 9:10 p.m. RAMIREZ left HARTSELL's residence.

10.   At 9:12 p.m. a red Saturn drove up to HARTSELL's driveway.  Minutes later, the vehicle, which was being driven by BARRY and had WOOLEN as a passenger, drove off.  A subsequent traffic stop resulted in the seizure of one ounce and ¼ of an ounce of methamphetamine from BARRY and WOOLEN, respectively.

11.   At 9:33 p.m. agents observed THOMPSON arrive at HARTSELL's residence.  THOMPSON left 20 minutes later and a traffic stop conducted by San Diego Deputy Sheriffs resulted in the seizure of a pound of methamphetamine.

12.   In the plea agreement, the defendant agreed that he (HARTSELL) received at least 471.3 grams of methamphetamine (actual) from RAMIREZ at HARTSELL's residence in Vista, California.  HARTSELL further distributed the methamphetamine (actual) as follows: 437.3 grams to THOMPSON; 27.4 grams to BARRY; and 6.6 grams to WOOLEN.  Furthermore, HARTSELL agreed that **beginning in or about January 2014 and continuing up to and including May 21, 2015**, he had an agreement with his codefendants to distribute methamphetamine. The estimated street value of the narcotics is $2,286.

13.   On May 20, 2015, an arrest warrant for HARTSELL was issued by the Southern District of California.

14.   On May 21, 2015, San Diego Sheriff Deputies executed a search warrant in the City of Vista.  Upon arrival, deputies contacted Mia Hartsell, the defendant's daughter, and they arrested her for an outstanding felony warrant.  Ms. Hartsell was also found to be in possession of two bags and a container of methamphetamine which had a total net weight of .52 grams.  Ms. Hartsell was also in possession of three LSD tablets and 1.71 net grams of psilocybin mushrooms.  She was booked into the Vista Detention Facility.

15.     On the same date, deputies went to an area near 299 Hutchinson Street in Vista, the location where HARTSELL was last seen.  However, deputies were unable to locate HARTSELL.  As such, because HARTSELL had a "history of violent contacts" the deputy sheriff used his certified patrol dog.  A short time after searching the area, the dog located HARTSELL secreted deeply in a bush with his hands buried under debris.  The deputy pulled his dog back and directed HARTSELL to show his hands or the dog would bite him.  However, HARTSELL refused to show his hands and he did not respond to the deputies' orders.  As such, the dog was released and was given the "bite command."  The dog bit HARTSELL's left arm and despite continued commands to show his hands, the defendant refused.  Rather, the defendant told the deputy to get the dog off of him, but the deputy told HARTSELL the dog would not release him until he shows his hands.

16.     Eventually, the defendant showed his hands, but due to the heavy brush, the deputy was unable to access HARTSELL or the dog.  Therefore, the deputy ordered the defendant to crawl out of the bush so the dog could release him, to which HARTSELL complied.  After he came out of the bush and the defendant stopped resisting the dog, the dog released HARTSELL.  Vista Fire Department responded and treated the defendant's wounds (three two-inch lacerations under HARTSELL's left arm).  Thereafter, the defendant was transported to Tri-City Medical Center for further treatment.

17.     Post arrest statements, if any, were not provided to the undersigned.

18.     Defense counsel for HARTSELL noted the defendant's addiction was the "primary demon" that drove his actions in this offense.  Nevertheless, HARTSELL takes responsibility for his involvement.  Defense counsel noted there is an agreement for a departure by the AUSA for the dog bite HARTSELL sustained during his arrest.  Furthermore, there is an agreement for the sentence received herein to run concurrent with HARTSELL's state conviction (see Pending Charges).

19.     Aside from noting she will not be making a role recommendation for HARTSELL, the AUSA did not have any additional comments for inclusion in the PSR.

20.     The case agent stated HARTSELL is known to associate with "the biggest drug dealers in North County."  The case agent noted HARTSELL made "three-pound methamphetamine purchases" in this conspiracy; he confirmed the methamphetamine distributed by HARTSELL was imported from Mexico.

**Pretrial Supervision Adjustment**

21.     Since his release from custody on July 23, 2015, the defendant has been supervised by a U.S. Pretrial Services Officers (USPTSO) in the Southern District of California.  The USPTSO reported HARTSELL reports to her office as directed; however, he has adjusted poorly to supervision, as evidenced by his multiple positive drug tests (see Substance Abuse).

### Defendant's Statement of the Offense

22.  HARTSELL was interviewed on March 29, 2016, at the U.S. Probation Office in San Diego, California.  The interview was conducted in English and in the presence of defense counsel.

23.  Following defense counsel's advice, HARTSELL affirmed the accuracy of the facts as outlined in the plea agreement and in the Offense Conduct section above.  Aside from noting he "sold to people he knew," HARTSELL did not provide any additional information regarding his role in this offense.  The defendant noted the only co-defendants he knew in this case were BARRY, WOOLEN, THOMPSON, and RAMIREZ.

24.  HARTSELL expressed remorse for his involvement herein.  He realizes he made a "huge and terrible mistake," and knows that he "got himself in trouble."  The defendant participated in this conspiracy, as he grew frustrated that he had "lost everything [he] had."  When asked to elaborate, HARTSELL said he used to earn a couple hundred thousand dollars per year from his mortgage business and now he has nothing.  HARTSELL said he was trying to rebuild his life, but in actuality he only "made enough to say stupid (drugged)."

### Offense Level Computation

25.  The 2015 Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level. USSG § 1B1.11.

### Count 1: Conspiracy to Distribute Methamphetamine

26.  **Base Offense Level:** The guideline for 21 U.S.C. § 841(a) offenses is found in USSG § 2D1.1. That section provides that an offense involving at least 150, but less than 500 grams of methamphetamine (actual), has a base offense level of 32. This offense involved 471.3 grams of methamphetamine (actual).  Accordingly, the base offenses level is 32.  USSG § 2D1.1(c)(4).                                    **32**

27.  **Specific Offense Characteristics:** The defendant is precluded from safety valve eligibility in light of his criminal history. As such, a two-level decrease pursuant to USSG § 2D1.1(b)(17), is not warranted.                                           **0**

28.  **Specific Offense Characteristics:** As the methamphetamine the defendant received was imported from Mexico, and he is not subject to an adjustment under USSG § 3B1.2, a two-level increase applies. USSG § 2D1.1(b)(5)                        **+2**

29.  **Adjustment for Role in the Offense:** Post arrest statements were not provided to this writer and during the presentence interview, HARTSELL adopted the factual basis of the plea agreement and he did not elaborate on his role in this conspiracy. HARTSELL simply stated he sold to people he knew.  Based on the above, it would appear the defendant was simply a distributor.  However, as the information available to this writer is limited, a proper role assessment cannot be

made. Accordingly, a role adjustment, either aggravating or mitigating, will not be recommended. USSG §§ 3B1.1 and 3B1.2 **0**

30. **Adjusted Offense Level (Subtotal):** **34**

31. **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). **-2**

32. **Acceptance of Responsibility:** The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG § 3E1.1(b). **-1**

33. **Total Offense Level:** **31**

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

34. Unless otherwise indicated, the defendant was represented by defense counsel or waived attorney representation for the following case(s).

### Sources of Information

35. Computer clearances were conducted through the FBI, CII, California Department of Motor Vehicles (DMV), courts and law enforcement agencies. Relevant documents were requested and are referenced for the following entries.

36. The defendant affirmed the accuracy of the criminal history letter (CHL) prepared by this office and which is dated December 8, 2015. He clarified the failure to appear listed in the CHL were for his drug court matters.

### Juvenile Adjudication(s)

37. None known.

### Adult Criminal Conviction(s)

| | Date of Arrest | Charge/Agency | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 38. | 12/20/01 (Age 45) | Ct. 1: 11378 H&S, Poss. for Sale of a C/S, 28.5 grams of Methamphetamine. Arresting agency unk. | San Diego Co. Sup. Crt. (Central), Docket No.: SCD165335 8/5/02: 08/05/02: P/G to a LIO, HS11377, Poss. of Meth. (fel.). 09/27/02: 3 yrs. prob., 90 | 4A1.2(e)(3) | **0** |

| | | | | | |
|---|---|---|---|---|---|
| | | | days' jail, $350 fine, register pursuant to HS11590. 12/29/03: Prob. rvkd. 02/20/04: Prob. reinst., mod., 111 days jail. | | |
| 39. | 9/5/03 (Age 46) | Ct. 1: 11550(a) H&S, Under the Influence of a C/S, to wit: methamphetamine; Ct. 2: VC23152(a), Driving Under the Influence of Drugs. Oceanside, CA PD | San Diego Co. Sup. Crt. (Vista), Docket No.: SCN168242 1/27/04: P/G both Ct. 1 and a LIO as to Ct. 2 (VC23103(a), Reckless Driving), (misds.). 3 yrs. prob., $1,450 fine, 2 days jail, HIV education class, reg. pursuant to HS11590, 90 days jail (stayed), 1st conviction program (3 mos.). 4/14/04: Prob. rvkd. for failure to enroll in SAAU (MITE). 3/30/06: Drug court term. 06/14/06: Prob. term. 156 days jail. | 4A1.1(c) | **1** |

It is noted, from May 5, 2004, to May 18, 2006, the defendant's probation was revoked on five separate occasions.

According to the plea colloquy, the defendant "drove a vehicle in violation of 23103.5 and was under the influence of an illegal substance (methamphetamine) in violation of HS11550."

| | | | | | |
|---|---|---|---|---|---|
| 40. | 10/23/03 (Age 46) | Ct. 1: 11377(a) H&S, Poss. of Methamphetamine. San Diego Co. Sheriff's Office | San Diego Co. Sup. Crt. (Vista), Docket No.: SCN169818 11/26/03: P/G (fel.), 3 yrs. prob., $323 fine. 12/26/03: Prob. rvkd. 1/9/04: D adm. viol. for discharge from treatment. 5/7/04: Prob. rvkd. due to D's 3rd FTA, AA 1x/week, PC1210 term. 6/10/04: Prob. rvkd. and | 4A1.1(a) 4A1.2(k) | **3** |

|  |  |  |  |  |  |
|--|--|--|--|--|--|
|  |  |  | extended for 3 yrs. 3/30/06: Term. from Drug Crt. w/out prejudice. 6/14/06: Prob. rvkd., 281 days' jail, $239 fine, 3 yrs. prob. 5/4/09: Prob. term., 189 days jail. |  |  |

Between February 27, 2004, and March 2, 2006, the defendant's probation was revoked on ten separate occasions, primarily for failing to appear to drug court.

According to the plea colloquy, "On 10/23/03, possessed crystal methamphetamine."

Court records reflect the defendant was successfully discharged from CRASH on February 26, 2009.

| 41. | 5/23/04 (Age 47) | 11377(a) H&S, Poss. of Methamphetamine. Oceanside, CA PD | San Diego Co. Sup. Crt. (Vista) , Docket No.: SCN178976 8/30/04: P/G (fel.). 9/2/04: 3 yrs. prob., drug crt. 6/24/04: Prob. rvkd. 9/23/04: Prob. rvkd. (FTA drug crt.). 3/2/06: Prob. rvkd. (FTA drug crt). 3/30/06: Term. from drug crt. 6/14/06: Prob. rvkd., 270 days' jail, $239 fine. 5/4/09: Prob. term. 152 days jail. | 4A1.1(c) 4A1.2(k) | **1** |

According to the plea colloquy, HARTSELL "did unlawfully have in my possession, a controlled substance, to wit: methamphetamine, in violation of HS11377(a)."

| 42. | 3/27/07 (Age 50) | Cts. 2-14, 530.5(a) PC, Unauth. Use of Identifying Personal Information. Arresting agency unk. | Orange Co. Sup. Crt. (Santa Ana) , Docket No.: 07CF1094 8/22/07: P/G (fel.'s), Total prison term as to all cts. - 10 yrs., $236,162.78 restitution. 3/14/11: Paroled. | 4A1.1(a) | **3** |

4/13/12: Parole discharged.

*Although charges were filed On March 27, 2007, the exact date of arrest is unknown.

The offense conduct took place between January 1, 2005, and December 27, 2006.

HARTSELL and four co-defendants were listed in the charging document, and a total of 187 counts were filed. 42 counts of 459-460(b) PC, Second Degree Burglary; 38 counts of 487(a) PC, Grand Theft; 33 counts of 529(3) PC, False Personation; 31 counts of 484g(a) PC, Fraudulent Use of Access Card; 10 counts of 496(a) PC, Receiving Stolen Property; 9 counts of 502(c)(2) PC, Computer Access and Fraud; 4 counts of 470(d) PC, Acts Constituting Forgery; three counts of 530.5(a) PC, Unauthorized Use of Identifying Personal Information; and one count each of 470a PC, Fictitious Driver's License for Forgery; 664-484g(a) PC, Attempted Fraudulent Use of Altered, Forged, Expired, or Revoked Access Card in Excess of $400; 664-487(a) PC, Attempted Grand Theft; 182(a)(1) PC, Conspiracy to Commit a Crime, were dismissed.

According to the plea colloquy, "On or about and between January 1, 2005, to December 30, 2006, I committed the following crimes in both Orange County and San Diego County as part of a large criminal enterprise to defraud numerous victims: 1) I willfully and unlawfully obtained the personal identifying information of the following people and I used this information to obtain goods in services in the names of these people without their consent: Arthur V., Deanna V., Steven B., Lucrecia S., David W., Susan W., Jennifer D., Louise S., Peter S., Julie T., Monica L., Solana Beach Presbyterian Church, Denise F., Patricia I., and Deanna W. In order to commit these crimes, I unlawfully accessed the database of Experian, Transunion and Equifax. Also, during this same time period, I unlawfully took money and personal property of Nordstrom's, Steven B., Sears, David W., Home Depot, Arthur V., Deanna W. and Susan W. and in each instance these items had a value exceeding $400.00. Finally, during this same time period, I unlawfully presented and used counterfeit checks in order to defraud the Bank of America and the commercial retailers. I knew these checks were counterfeit. I apologize to each and every victim that I have financially..."

It is noted, according to an article found in the San Diego Union-Tribune, HARTSELL "ran an identity-theft ring on behalf of a white supremacist prison gang." Reportedly, the defendant's mortgage company (First Choice Mortgage) "facilitated some legitimate loans, but was also a front for stealing personal information used to defraud more than 250 individuals and retailers of more than $500,000."

## Criminal History Computation

43.   The criminal conviction(s) listed above result(s) in eight criminal history points.

44.   The total criminal history score is eight. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of eight establishes a criminal history category of IV.

### Other Criminal Conduct

45.   On November 15, 2004, HARTSELL was arrested by CHP Officers in Rancho
California, California for 532(a) PC, Obtain Money/Etc. by False Pretenses. On March
23, 2012, the case was dismissed for furtherance of justice in Riverside County Superior
Court, Perris Division, under Docket No. SWM026704.

On or about March 19, 2014, HARTSELL was arrested by San Diego County Sheriff's
Deputies and later charged in San Diego County Superior Court, Vista Division, Docket
No. SCN333860, with 4573 PC, Bringing a Controlled Substance into Jail. On October
22, 2014, the case was consolidated with Docket No. SCN326833.

On March 20, 2014, HARTSELL was arrested by San Diego County Sheriff's Deputies
and later charged in San Diego County Superior Court, Vista Division, Docket
No. SCN330376, with 530.5(a) PC, Get Credit Using Other's ID; 11378 H&S, Possession of a
Controlled Substance for Sale; and 496(a) PC, Receiving Known Stolen Property. During
a traffic stop, HARTSELL was found in possession of .14 grams of methamphetamine,
$3,250 in cash, a methamphetamine pipe, and two counterfeit $50 bills. On October 22,
2014, the case was consolidated with Docket No. SCN326833.

### Other Arrests

46.   The following information was taken from arrest reports as well as HARTSELL's CII and
local rap sheets. Further information regarding the offenses and dispositions is unknown.

On February 26, 1993, HARTSELL was arrested by San Diego Police Officers for 647(b)
PC, Disorderly Conduct; and 647(a) PC, Disorderly Conduct: Soliciting a Lewd Act.

On March 7, 2013, HARTSELL was arrested by Oceanside Police Officers for 530.5 PC,
Use of Other's ID to Get Credit/Etc. Between January and November of 2012, the
defendant opened several fraudulent business accounts and made purchases through those
accounts which resulted in over $67,000 in total losses to GE Capital and Lowe's. The
charges were later dropped for evidentiary reasons.

On July 15, 2004, HARTSELL was arrested by San Diego County Sheriff's Deputies for
11337(a) H&S, Possession of Controlled Substance.

### Pending Charges

47.   On December 14, 2013, HARTSELL was arrested by San Diego County Sheriff's
Deputies and later charged with 11378 H&S, Possession of a Controlled Substance for
Sale; 11350(a) H&S, Possession of a Controlled Substance; 11377(a) H&S, Possession of
Methamphetamine; and 11364.1(a) H&S, Possession of Unlawful Paraphernalia.
HARTSELL was at the home of a female companion, Carley Hull, when officers found
them in possession of .75 grams of heroin, 5 grams of meth, .44 grams of marijuana, 29
plastic bags, a glass meth pipe, and $1,640 in cash in the home. The case (Docket No.
SCN326833) was later consolidated in San Diego County Superior Court, Vista Division,

with SCN333860 and SCN330376. It should be noted that on October 27, 2015, a trial call hearing was vacated, and per local records there are no upcoming matters on calendar; however it does not appear the case has been resolved.

## PART C. OFFENDER CHARACTERISTICS

48.    The following biographical information was provided by the defendant during his presentence interview, and was verified by his mother, "Trudy."

**Personal and Family Data**

49.    HARTSELL was born on November 21, 1956, in Monterey, California.  His father, Boyce Alexander Hartsell, passed away on August 21, 1994, after he contracted staph infection subsequent to undergoing open heart surgery.  HARTSELL's mother, Gertraud Marton (age 82) works in property management and she resides in Vista, California.  The defendant's parents divorced as a result of "marital problems."

50.    The defendant was the only child born to his parents union.  However, he has one maternal half-brother, Andras Marton (age 44) a colonel for the U.S. Army who resides in Alabama.  Mr. Marton was born to Ms. Marton's union to the late Andras Marton Sr. (passed in February 2014).  HARTSELL reported he also has two paternal half-siblings who were born from Mr. Hartsell's union to the late "Helen."  Mickey and Cathy Hartsell reside in North Carolina and their ages or occupations were unknown by HARTSELL as he has minimal contact with them.

51.    Following his parents' divorce, the defendant was reared by his mother in Germany.  Thereafter, the defendant and his mother returned to the U.S. and established their home in Orange, California.  Ms. Marton married Andras Marton when the defendant was nine-years-old, and HARTSELL described his relationship with his stepfather as "good."  Reportedly, during the defendant's childhood, Mr. Hartsell was away on three separate Vietnam tours and when he returned to the U.S., Mr. Hartsell reportedly brought with him a new family.  As a result, HARTSELL became angry at his father and the two did not speak for approximately ten years.

52.    In 1962, the defendant was reportedly kidnapped by his father for a period of approximately six months.  Mr. Hartsell took the defendant to Reno, Nevada, and placed him with a family in a nearby farm.  Reportedly, law enforcement officials searched for the defendant; however, it was not until Mr. Hartsell placed a phone call to Ms. Marton that the Federal Bureau of Investigations (FBI) obtained a lead and were able to rescue HARTSELL.

53.    The defendant was always provided his basic necessities and he was a victim of verbal and physical abuse at the hands of his mother.  HARTSELL said, "My mom had a lot of shit going on."  This abuse was never reported to local authorities.

54.    HARTSELL has three children born from three separate romantic relationships.  Mia Alexandra Hartsell (age 26) was born to his relationship to Holly Welch.  Ms. Hartsell was arrested on the same date as HARTSELL and Ms. Welch resides in Colorado

Springs.  Boyce Alexander Hartsell (age 14) was born to HARTSELL's relationship to Jessica Valencia.  Reportedly, HARTSELL maintained a 15-year relationship with Ms. Valencia, but the two parted ways as Ms. Valencia reportedly abused methamphetamine.  Ms. Valencia passed away of breast cancer and HARTSELL now has custody of his son.  Reportedly, Boyce resides with his maternal grandparents in Oceanside, California, as HARTSELL did not want to disrupt his schooling.  Boyce is a professional drummer and he also plays the bass at Carlsbad High School.  Finally, Corey (age 1), was born to the defendant's romantic relationship to Carley Hull (age 25).  Corey and Ms. Hull reside in Fallbrook, California, and Ms. Hull's occupation is unknown.  The defendant is not court ordered to pay child support for his two minor children, but he noted he provides financial support for both as he is able.

55.  As for his residential history, as previously noted, the defendant was raised in Germany up until the age of five.  Thereafter, he moved to Orange, California, where he remained from 1962 to 1988.  The defendant reported he also lived in the following cities; however, he could not recall dates of residency: Vista (22 years); Lake Tahoe (a couple of years) and Redding, California (7 or 8 months).

56.  Release Plans: HARTSELL wishes to remain in San Diego.  He hopes to start a business again, thereby creating jobs for others in the community.  The defendant hopes to gain some automotive skills while in custody of the Bureau of Prisons (BOP), thereby allowing him an opportunity to seek jobs in this field.

57.  Ms. Marton verified her son's personal and family data.  She described HARTSELL as a "loving and good person," who unfortunately took the wrong path.  She is hoping the Court will give her son another opportunity so he can demonstrate that he can be a good citizen.  Ms. Marton remains supportive of her son and she will present in court for sentencing.

**Physical Condition**

58.  The defendant informed he underwent open heart surgery in 1998; he has not suffered any complications.

59.  At the time of his arrest, HARTSELL was bitten by a police dog on his left arm.  His injury required HARTSELL to undergo five separate operations and various skin grafts.  The defendant remained at Tri City Hospital in San Diego for a period of approximately five weeks.  Tri City Medical records reflect the defendant was discharged on August 2, 2015.

60.  HARTSELL takes the following medications to treat his symptoms: *Metoprolol, Astrovastin, Percocet,* and *Aspirin.*  It is noted, the defendant reported being allergic to *Norcos.*

61.  The defendant disavowed having any tattoos; however, he has a scar on his left arm from the dog bite he suffered as a result of his arrest herein.

### Mental and Emotional Health

62.  The defendant has suffered from Attention Deficit Hyperactivity Disorder (ADHD) since childhood; he takes *Atavan* to treat his condition.

63.  Since his release on bond, the defendant has been participating in individual counseling with Dr. Todd Pizitz, and it appears he is positively progressing.  According to HARTSELL's February 2016 monthly treatment report, the defendant is cooperative, he engages in therapy sessions, and is receptive to all therapeutic interventions.  The therapist said, "He is currently working on improving insight about unhealthy interpersonal relationships."

### Substance Abuse

64.  HARTSELL disavowed imbibing alcohol.

65.  The defendant provided the following limited information regarding his substance abuse history, adding U.S. Pretrial Services had additional information on this topic.  At age 16, he began to smoke marijuana.  Then at age 21 or 23, he began to use cocaine.  It was not until age 45, when he began to consume methamphetamine.  HARTSELL also experimented with heroin, LSD, and mushrooms, but he did not provide an age at which he began its consumption.  Rather, he noted he used these three drugs "once in a while."  The defendant's drugs of choice are cocaine and methamphetamine.

66.  HARTSELL reported he last consumed methamphetamine on October 2, 2015.  However, it is noted, U.S. Pretrial Services records reveal the defendant had six positive drug tests for methamphetamine from August 25, 2015, to March 21, 2016, two dilute tests dated February 22 and 25, 2016, and a recent positive for methamphetamine dated March 29, 2016, which has been sent to the national lab for confirmation.

67.  The defendant participated in CRASH approximately ten years ago and he completed their short-term program (verified).  Thereafter, on an unknown year, he entered the CRASH long-term program; however, he did not graduate from said program.  On January 27, 2016, the defendant completed CRASH once again.  He transitioned to Casa Blanca Sober Living, where he has been residing since February 12, 2016 (verified).

68.  If offered, HARTSELL said he would take advantage of the Residential Drug and Alcohol Program (RDAP) offered by the BOP.

69.  Ms. Marton is aware that HARTSELL has a drug dependency; however, she was unaware of the types of drugs he abuses.  Ms. Marton corroborated the defendant graduated from CRASH and that he is currently at Casa Blanca sober living.

### Educational, Vocational and Special Skills

70.  The defendant graduated from Villa Park High School in Orange, California, in 1975.  Thereafter, he briefly attended Fullerton College.  HARTSELL intended on majoring in law; however, he later changed his major and played baseball for the college.  Ms.

Marton corroborated her son graduated from Villa Park High School.  School records were requested and are awaited.

71.   HARTSELL has specialized training as a real estate broker.  He held a California license for 19 years; however, his license was revoked in 2009, as HARTSELL owes over $200,000 in restitution to various victims in his Orange County Superior Court conviction.  The defendant informed he last made a payment towards restitution in 2011, as he has not had the financial means to make any payments.   This writer left messages for the California Victim Compensation Unit in efforts to get information on the outstanding amount of restitution owed; however, a return call is awaited as of the writing of this report.

72.   The defendant was also a professional baseball player for many years.  Reportedly, he played short stop and third base for the La Jolla Seals from 1982 to 1984 and in a Major League Baseball (MLB) team with Ricky Henderson in Tempe, Arizona, in 1998.  Furthermore, HARTSELL reported he provided private baseball lessons to Jane Fonda's son on an unspecified date.  It is noted, this writer was unable to verify any of this information, as a search of the La Jolla Seals rendered negative results.  Furthermore, there is insufficient information to verify that he played MLB.

73.   HARTSELL stated he is also a musician; he plays the bass and guitar.  Reportedly he had a recording studio in Oceanside for approximately five years (dates unspecified) and he was also part of the Heart and Soul Band from the late 1990's to the early 2000's, also out of Oceanside.

**<u>Employment Record</u>**

74.   Prior to his arrest for the instant offense, the defendant was self-employed in wholesale car auctions.  He stated his income varied, but he noted that when he was not making sufficient to meet his financial needs, his family would subsidize him.

75.   Since 2011, the defendant has also worked for Clearbrook Property Management in San Diego County.   Reportedly, he earns $2,500 to $3,000 monthly.   Ms. Marton corroborated HARTSELL works at this property, as she is also employed at said company.

76.   From 1990 to 2007, HARTSELL owned First Choice Mortgage (verified).  He explained that was going to sell his business to an unspecified person; however, prior to signing the contract, this unspecified person passed away.  As a result, the defendant kept the business and ended up "downsizing" until he eventually closed down his business in 2007.   HARTSELL reported he earned "a couple hundred thousand dollars per year."  Ms. Marton noted HARTSELL was very successful with his business.  She reported he had 27 employees working for him at one point.  Ms. Marton was unaware of the reasons surrounding the closure of his business. It should be noted that this is the business the defendant owned, which was an identity theft business, which was shut down in 2007.  This led to the defendant's 10 year prison sentence in Case No. 07CF1094.

### Financial Condition: Ability to Pay

77. The following information was provided by the defendant during his presentence interview. It is noted, since HARTSELL was unsure of the approximate values of his motorcycle and four vehicles, the listed amounts are approximate values obtained from Kelly Bluebook online services. All of his assets are paid off, and HARTSELL noted his Suburban was seized during his arrest herein.

78. It is noted, according to Accurint, HARTSELL filed for Chapter 13 bankruptcy in San Diego County on April 9, 2003, and March 2, 2004. The matters (Case Nos. 0303345 and 0401917) were dismissed on May 21, 2003, and May 5, 2004. Moreover, on July 21, 1995, HARTSELL filed for Chapter 7 bankruptcy and the matter (Case No. 9507738) was "discharged" on May 23, 1996.

79. Additionally, Accurint reflects the defendant has numerous State and Federal Tax Liens and Small Claims Judgments.

### Assets

| | | |
|---|---|---|
| Motorcycle | 1991 Harley | $1,000.00 |
| Vehicle | 2000 Explorer | $1,000.00 |
| Vehicle | 1995 Suburban | $1,000.00 |
| Vehicle | 1988 Mercedes 300 | $500.00 |
| Vehicle | 1982 BMW 633 | $500.00 |

**Total Assets**                                        $4,000.00

**Total Net Worth**                                     $4,000.00

### Monthly Income

Salary                                                  $2,500.00

**Total Monthly Income**                                $2,500.00

### Monthly Expenses

| | | |
|---|---|---|
| Rent | Casa Blanca Sober Living | $1,200.00 |
| Groceries and Supplies | | $300.00 |
| Car insurance | | $150.00 |
| Gasoline | | $300.00 |

**Total Monthly Expenses**                              $1,950.00

**Total Monthly Cash Flow**                             $550.00

80.     The defendant reported he also pays unspecified monthly amounts of voluntary child support for his two minor children, and he disavowed having any debts/liabilities.

81.     Based on the above, it would appear the defendant has a positive monthly cash flow. However, based on his familial responsibilities and the significant amount of restitution he owes for his Orange County Superior Court conviction, it is believed that a fine in this matter would be impractical.

## PART D. SENTENCING OPTIONS

**The guideline options are advisory pursuant to <u>United States v. Booker</u>.**

### Custody

82.     **Statutory Provisions:**  The maximum term of imprisonment is 20 years. 21 U.S.C. § 841(b)(1)(C).

83.     **Guideline Provisions:** Based upon a total offense level of 31 and a Criminal History Category IV, the guideline imprisonment range is 151 months to 188 months.

### Supervised Release

84.     **Statutory Provisions:**  The Court must impose a term of supervised release of at least three years. 21 U.S.C. § 841(b)(1)(C).

85.     **Guideline Provisions:**  The guideline term of supervised release is three years. USSG §5D1.2(c).

### Probation

86.     **Statutory Provisions:**  The defendant is eligible for not less than one nor more than five years' probation because the offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service.

87.     **Guideline Provisions:** Since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation. USSG §5B1.1, comment. (n.2).

### Fines

88.     **Statutory Provisions:**  The maximum fine is $1,000,000. 21 U.S.C. § 841(b)(1)(C).

89.     **Guideline Provisions:** The fine range for this offense is $15,000 to $1,000,000. If the defendant is convicted under a statute authorizing (A) a maximum fine greater than $250,000, or (B) a fine for each day of violation, the Court may impose a fine up to the maximum authorized by the statute. USSG §§5E1.2(c)(4) and 5E1.2(h)(1).

### Impact of Plea Agreement

90.    Based on the written plea agreement, the parties have agreed to the following advisory guideline calculations:

      1.   Base Offense Level, USSG § 2D1.1(c)(4), based on 471.3    32 grams of methamphetamine (actual)

      2.   Acceptance of Responsibility, USSG § 3E1.1(a) & (b)    -3

91.    There is no agreement as to the defendant's criminal history category.

92.    The parties agree that the government will recommend a downward variance that is equivalent to a four-level reduction under 18 U.S.C. § 3553(a) for: 1) the expedited resolution of the case; 2) injuries suffered by defendant as a result of defendant fleeing from law enforcement and later found by a certified patrol and tracking canine; and 3) the reasonable but delayed presentment to a magistrate judge after defendant's arrest.  The parties further agree that the government will recommend that defendant be sentenced to the low end of the advisory guideline range as calculated by the government, pursuant to this agreement.

93.    The defendant may request additional adjustments, departures, and sentence reductions under 18 U.S.C. § 3553; the government may oppose any such requests.

## PART E. FACTORS THAT MAY WARRANT DEPARTURE

94.    None.

## PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

95.    None.

## PROBATION OFFICER'S ANALYSIS/JUSTIFICATION

96.    **In analyzing this case and formulating a recommendation, the probation officer has considered the advisory sentencing guidelines and pertinent policy statement(s) issued by the Sentencing Commission in effect on the date of sentencing, along with the factors listed at 18 U.S.C. § 3553(a).**

97.    HARTSELL is before the court after pleading guilty to conspiracy to distribute methamphetamine.  In the matter at bar, the defendant obtained methamphetamine from RAMIREZ and thereafter, the defendant sold varying quantities to THOMPSON, BARRY, and WOOLEN.  When deputy sheriff's attempted to arrest HARTSELL, he did not comply, and a patrol dog was deployed on the defendant.  HARTSELL sustained injuries to his left arm as a result and he was taken to Tri-City Medical Center for treatment.  Post arrest statements, if any, were not provided to this writer and during the presentence interview HARTSELL elected not to provide any information regarding his role in this offense.  The defendant noted he was trying to rebuild his life; however,

selling methamphetamine only allowed him to earn enough to "stay stupid (drugged)." Nevertheless, the defendant expressed remorse for his actions herein.

98.     The defendant has resided in California for most of his life and he described a somewhat troublesome childhood. He was reportedly the victim of physical and verbal abuse at the hands of his mother, and was also abducted for six months by his father. The defendant has suffered from ADHD since childhood, but it does not appear he has any additional mental or emotional health issues that would be of concern to this officer.

99.     HARTSELL reported a steady and successful self-employment history, which was verified by his mother. He was a mortgage broker for a significant period of time. It is noted, the defendant reports he lost his California broker license in 2009, as a result of the outstanding restitution he has for his Orange County conviction. However, given the newspaper article information noted above, it is safe to assume the cause of his revoked license was in fact his conviction and HARTSELL's actions therein. Despite this hurdle, the defendant managed to obtain employment as a property manager, where he has had employment since 2011.

100.    The defendant was released on bond on July 23, 2015, and available UPTS records reflect he was compliant for the first month. However, on August 25, 2015, the defendant provided his first positive for methamphetamine, and he has not discontinued use of this drug as evidenced by his most recent positive dated March 29, 2016. In his favor, he completed CRASH and transitioned to a sober living since February 2016.

101.    As for sentencing, the advisory guideline range is 151 to 188 months custody. The defendant has five prior criminal convictions, and all but one are drug-related. The fifth conviction is a financial offense, wherein defendant reportedly ran an identity-theft ring on behalf of a white supremacist prison gang. The defendant has a serious drug dependency, which clearly have led to him engaging in criminal conduct. Although he has participated and graduated from CRASH on two occasions, it appears the defendant requires additional services. This probation officer is concerned about HARTSELL's disregard for the Court's directives, as evidenced by his violations while on bond, specifically his continued drug use. As such, after considering the aforementioned, it is believed that a low end recommendation of 151 months is appropriate at this juncture. A three-year term of supervised release to follow is also being recommended. Along with a recommendation for participation in RDAP while in the custody of the BOP.

## SENTENCING RECOMMENDATION

### Custody

102.    <u>Statutory Maximum</u>:        20 years

103.    <u>Guideline Range</u>:          151 to 188 months

104.    <u>Recommendation</u>:          151 months

### Supervised Release

105.  Statutory Maximum:      at least 3 years

106.  Guideline Range:        3 years

107.  Recommendation:         3 years

### Recommended Conditions of Supervision

108.  That the defendant abide by the mandatory and standard conditions of supervision and the following condition(s):

1.  Participate in a program of drug or alcohol abuse treatment, including drug testing and counseling, as directed by the probation officer.  Allow for reciprocal release of information between the probation officer and the treatment provider.  May be required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on ability to pay.

2.  Report all vehicles owned or operated, or in which you have an interest, to the probation officer.

3.  Submit your person, property, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

### Fine

109.  Statutory Maximum:      $1,000,000

110.  Guideline Range:        $15,000 to $1,000,000

111.  Recommendation:         $0

HARTSELL, Michael Alexander                                                    22

---

**<u>Special Assessment</u>**          $100

Respectfully Submitted,

DAVID J. SULTZBAUGH
CHIEF PROBATION OFFICER

By:

Alexandra E. Platas
Senior U.S. Probation Officer

Reviewed and Approved:

Christopher B. Deatrick
Supervising U.S. Probation Officer
April 14, 2016

PROB 2A SD

## SENTENCING SUMMARY CHART

USPO  __x__
AUSA  _____
DEF   _____

Defendant's Name: HARTSELL, Michael Alexander          Docket no.    3:15CR01442-005-JLS

Guideline Manual Used:     November 1, 2015          Agree with USPO Calculations:

Base Offense Level:    (Drug Quantity, if Applicable:  USSG § 2D1.1(c)(4), 471.3 gms. of methamphetamine (actual)    )          32

Specific Offense Characteristics: _____          _____

USSG § 2D1.1(b)(5), Importation of Methamphetamine          +2

USSG § 2D1.1(b)(17), Safety Valve          0

_____          _____

Victim Related Adjustment:          _____

Adjustment for Role in the Offense:          0

Adjustment for Obstruction of Justice:          _____

Adjustment for Reckless Endangerment During Flight:          _____

Adjusted Offense Level:          34

☐ Combined (Multiple Counts)  ☐ Career Offender  ☐ Armed Career Criminal

Adjustment for Acceptance of Responsibility:          -3

Total Offense Level:          31

Criminal History Score:          8

Criminal History Category:          IV

☐ Career Offender          ☐ Armed Career Criminal

Guideline Range:          from   151

(Range limited by:  ☐ minimum mandatory     ☐ stat maximum)          to   188  mths

Departures:

None. _____          _____

_____          _____

_____          _____

          _____

Resulting Guideline Range:          from   _____

          to   _____  mths